**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Remus Townsend,** | ) | **CASE NO. 1:15 CV 2469** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Cleveland Metropolitan School District,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 27).  This is an employment discrimination case based on disability. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Remus Townsend filed this Complaint against defendants Cleveland Metropolitan School District (hereafter, the School or defendant) and Irene Scherzer.[1] By prior

---

[1] Plaintiff was originally represented by an attorney.  Plaintiff is now proceeding *pro se* following his counsel's withdrawal.

1

Memorandum of Opinion and Order, this Court dismissed Scherzer.

Generally, the Complaint alleges the following. Plaintiff began working for defendant in 2003 as an Instructional Assistant. In 2011, plaintiff sprained his right finger while breaking up a fight at the School. Plaintiff took medical leave for this injury and filed a workers' compensation claim. His physician thereafter informed him that he could return to work with the restriction that he not be required to "break up student fights." Subsequently, plaintiff's supervisor made unflattering comments to plaintiff about his workers' compensation claim and "wrote up" plaintiff for arguing with him. Plaintiff reported the discrimination to defendant which failed to conduct a proper investigation and thereafter suspended him.

In May 2013, in an effort to accommodate his disability, plaintiff began to apply for jobs as a substitute teacher and Teacher Assistant. He was denied both positions because "breaking up student fights" was considered an essential job duty. In August 2013, plaintiff requested paperwork to obtain leave from defendant for his medical condition while he searched for another job opportunity. Plaintiff was informed that defendant "would not process his request for leave because he was being fired immediately because they would not provide an accommodation for his hand condition." Plaintiff was terminated on August 12, 2013.

Plaintiff's Complaint asserts five claims: Disability discrimination (Count One), Wrongful termination (Count Two), Failure to hire based on disability discrimination (Count Three), Failure to provide reasonable accommodation (Count Four), and Intentional infliction of emotional distress (Count Five).

In support of its motion, defendant submits the affidavits of Angelique Hartzell, Lester Fultz, and Irene (Scherzer) Dunbrook with incorporated exhibits, as well as plaintiff's answers to

interrogatories, requests for admissions, and responses to requests for production of documents. In response, plaintiff filed an opposition consisting of a "statement of facts" amounting to seven numbered sentences, as well as various exhibits which are not properly supported as required by Rule 56. Additionally, over the course of about a week and without leave of court, plaintiff filed six "supplements" which likewise contained a "statement of facts" and various exhibits. After defendant filed its reply brief, plaintiff filed another supplement. At a minimum, this Court has not considered that filing as sur-reply briefs are not permitted without leave of Court. As to the other supplements, defendant objects to their consideration. The Court notes that most of the exhibits are not authenticated and the "facts" are not properly supported, and are conclusory and subjective. However, the Court has done its best to consider any admissible fact which is relevant to the motion.

Irene Dunbrook is defendant's human resources manager. She avers the following in pertinent part as supported by incorporated evidence. Plaintiff was employed as a security officer for the School and injured his finger breaking up a student fight on May 2, 2011. He filed a workers' compensation claim in connection with the injury. For the next two years, plaintiff was either on workers' compensation Total Temporary Disability or working light duty in the District's Transitional Work Program. In February 2013, plaintiff's workers' compensation physician determined that he was permanently restricted from breaking up fights. On August 12, 2013, plaintiff was notified of his termination from employment as a security officer because he could not perform the essential functions of the position given that he was permanently restricted from breaking up fights. The record indicates that plaintiff had last reported to work on October 26, 2012, and had not worked at all in 2013. Subsequent to his separation, he attempted to apply

for FMLA leave. It was denied because he had not worked a sufficient number of hours in the proceeding 12 months, and the paperwork was untimely given that it was submitted after he had been terminated. Plaintiff never submitted a Reasonable Accommodation Request Form to defendant which form the defendant uses to determine whether an employee has a disability and to what extent a reasonable accommodation is required. (Dunbrook aff.)

Angelique Hartzell, defendant's Legal Counsel, provides a very detailed summary, again supported by incorporated evidence, of plaintiff's workers' compensation history. Hartzell also confirms that plaintiff declined multiple invitations by the Ohio Bureau of Workers' Compensation to participate in its Vocational Rehabilitation Program which assists injured workers in obtaining work in a new position with the same or another employer. (Hartzell aff.) Over the course of more than two years following his injury, plaintiff was on sick leave, temporary total disability, or working in defendant's Transitional Work Program when his restrictions pertaining to his injury permitted. The latter program is a temporary light duty program offered by defendant and generally limited to 12 weeks, although plaintiff was permitted to work in it for considerably longer than that. Although plaintiff was referred to the Vocational Rehabilitation Program, he refused multiple invitations to participate even after his workers' compensation doctor indicated that his restrictions were permanent. Plaintiff's vocational rehabilitation case manager contacted plaintiff to reiterate that his employer could not accommodate the permanent restrictions, but plaintiff refused her offer to assist him in finding alternate employment within his restrictions. Plaintiff's total temporary disability was terminated in June 2013 because he had reached maximum medical improvement. (*Id.*)

Lester Fultz was the Chief of the defendant's Division of Safety and Security with

oversight over defendant's police force and security officers, including plaintiff. He avers that security officers have numerous duties requiring the ability to use both hands, and one of the essential functions of the position is the ability to break up fights. Defendant permitted plaintiff to work in the Transitional Work Program for many months although it is generally limited to 12 weeks. Once plaintiff's physician permanently restricted him from breaking up fights, the defendant could no longer employ him as a security officer because that involves an essential function of the position. In October 2011, plaintiff came into Fultz's office and engaged in a loud tirade, refusing repeated commands to stop shouting and leave the office.  As a result, plaintiff was suspended for five days.  (Fultz aff.)

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Defendant moves for summary judgment on all claims. Counts One through Three allege some form of discrimination based on the Americans with Disabilities Act (ADA) and the Ohio statute.  Count Four alleges a failure to provide a reasonable accommodation for plaintiff's disability.  Count Five alleges intentional infliction of emotional distress based on the foregoing.

**(1) Disability Discrimination**

"Given the similarity of the Ohio and federal statutes governing disability discrimination,

6

analysis of claims made pursuant to the Americans with Disabilities Act applies to Ohio discrimination claims." *Swank v. Caresource Management Group Corp.,* 2016 WL 4376432 (6th Cir. August 17, 2016) (citations omitted). The Americans with Disabilities Act forbids employment discrimination on the basis of disability. 42 U.S.C.A. § 12112(a). Under the familiar *McDonnell Douglas* burden-shifting framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the termination. Plaintiff must then present evidence from which a jury could find that defendant's proffered reason is merely pretextual.

To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari v. Ford Motor Company,* 826 F.3d 885 (6th Cir. 2016) (citations omitted)

Initially, defendant argues that plaintiff cannot meet the first element, i.e., he is disabled. It is plaintiff's burden to show he is disabled. "Under the ADA, the term "disability" means a physical or mental impairment that substantially limits one or more major life activities of an individual; a record of such an impairment; or being regarded as having such an impairment." *Ferrari*, citing 42 U.S.C. § 12102(1).

As discussed above, plaintiff's right finger suffered an injury and his doctor permanently restricted him from breaking up fights. There is no evidence that the injury substantially limits a

major life activity which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(A). Although he does not argue that his injury prevented him from the major life activity of working, the evidence shows that while plaintiff was restricted from breaking up fights, he did work light duty as a security officer where he signed people in at the front of a building." (Hartzell aff. ¶ 20) In fact, plaintiff's responses to defendant's interrogatories show that he is not disabled from working. In response to an inquiry regarding duties performed with a current employer, plaintiff responded, "I am a computer lab instructor, I use both of my hands to write lesson plans for my students and tutor them in all high-school subjects without accommodation..." (Doc. 27 Ex. 4) Additionally, when asked if he was treating for any continuing medical problem to his right hand, plaintiff responded: "I take Tylenol and other pain medicine when my hand or wrist hurts." (*Id.*) On this basis, plaintiff does not show he is disabled.

Nor does plaintiff show that defendant regarded him as having an impairment that substantially limits a life activity. Instead, defendant shows that it expected him to return to full duty as a security officer without restriction and offered him light duty in the meantime. Once plaintiff's doctor permanently restricted him from breaking up fights, defendant could no longer employ him as this was an essential function of the job. (Hartzell, Fultz affs.)

Because he cannot show that he is disabled, plaintiff's claims for disability discrimination fail. Even assuming he is disabled, defendant argues that plaintiff was not otherwise qualified for the position, with or without reasonable accommodation, because, as demonstrated by Fultz's affidavit testimony, being able to break up fights is an essential duty of

8

a school security officer. Plaintiff suggests in his Complaint that student fights "are a rare occurrence" and defendant "could have offered an accommodation by allowing another CMSD employee to break up student altercation, but refused to do so. (Compl. ¶¶39-40) However, plaintiff offers no evidence controverting Fultz's averments that

> Fights can happen at any time, suddenly and without advance warning. A person who is unable to break up fights is unable to perform an essential function of the job of CMSD security officer. It would be neither practical nor reasonable to continue to employ a security officer who was permanently unable to break up fights. It would neither be practical nor reasonable to have another security officer constantly with another security officer to break up fights on their behalf.

(Fultz aff. ¶¶ 9-10) On this basis, the Court agrees that plaintiff cannot establish the second element of his claim.[2]

Although not clear, it appears that plaintiff is also alleging that his suspension amounts to disability discrimination. This claim fails for the same reason that plaintiff cannot demonstrate he is disabled. Furthermore, Fultz's affidavit testimony, set forth above, relates that plaintiff was suspended for five days as a result of his loud tirade and refusing repeated commands to stop shouting and leave the office. (Fultz aff.) Fultz attaches the May 9, 2012 letter informing plaintiff that as a result of a disciplinary hearing, he was being suspended for five days for improper conduct and disobedience of orders. (*Id.* Ex. 3) There is no evidence that the suspension was actually a pretext for disability discrimination.[3]

---

[2] Although not addressed, plaintiff points to no evidence supporting the fifth element as to his termination, i.e., that the position remained open while the employer sought other applicants or the disabled individual was replaced.

[3] The Complaint also alleges that plaintiff tried to obtain "leave" for his medical condition, but he was terminated before his request was processed. The evidence shows the "leave" was FMLA (Family and Medical Leave Act) leave. Plaintiff seems to assert that this action was another form of disability discrimination.

9

For these reasons, plaintiff's ADA and Ohio discrimination claims fail.

**(2) Reasonable Accommodation**

A failure to accommodate claim is separate from a disability termination claim. *See Blazek v. City of Lakewood,* 576 Fed.Appx. 512 (6th Cir. 2014). In order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Melange v. City of Center Line,* 482 Fed.Appx. 81 (6th Cir. 2012) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974 (6th Cir.2011)).

The prima facie case fails where the plaintiff cannot show that he requested a reasonable accommodation. "The employee bears the burden of requesting a reasonable accommodation." *Melange, supra* (citing *Johnson*, 443 Fed.Appx. at 983) "Once the employee requests an accommodation, the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.' " *Id.* (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir.2007)). "But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered." *Id.* (citing *Lockard v.*

---

(Doc. 31, 32) However, Dunbrook's affidavit testimony is uncontroverted and shows that plaintiff attempted to apply for FMLA leave after he was separated from employment and he was ineligible due to his insufficient number of hours worked in the proceeding 12 months. There is no evidence that plaintiff was denied FMLA leave because he was disabled. Nor does plaintiff allege a violation of the FMLA.

*Gen. Motors Corp.,* 52 Fed.Appx. 782, 788 (6th Cir.2002)).

"In certain situations, a request for accommodation can be inferred by context. Nevertheless, we require a request for a reasonable accommodation—whether explicitly or by inference—to establish a prima facie claim for failure to accommodate." *Aldini v. Kroger Company of Michigan,* 628 Fed.Appx. 347 (6th Cir. 2015)(citations omitted) "We place this burden on the employee because the employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.* Consequently, "the general rule is that when the employee does not propose an accommodation, his failure to accommodate claim must fail." *Id.*

This claim fails for the reasons stated above finding that plaintiff was not disabled. Additionally, defendant argues that plaintiff never requested an accommodation. In support, Dunbrook avers that the School has two forms that it supplies to an employee who requests a reasonable accommodation- the Reasonable Accommodation Form which the employee first completes and the Medical Inquiry Form Response to An Accommodation Request which is to be completed by the employee's physician. Plaintiff never requested a reasonable accommodation and so never submitted the first form. Consequently, he did not receive the second form. (Dunbrook aff. ¶¶8-13) Plaintiff does not dispute this testimony.

Plaintiff states in his sixth supplemental brief that his Ohio Bureau of Workers' Compensation doctor requested an accommodation for him to be a teacher's assistant. (Doc. 34) In an earlier document, plaintiff attached one of his physician's medical reports which states, "Permanent restrictions for the hand, he was a teacher's assistant, and he feels that this would be appropriate." (Doc. 30 Ex. 4) However, a statement in a medical report that the patient feels that

11

a position would be appropriate for him simply does not amount to a request for a reasonable accommodation.

Furthermore, plaintiff states in his facts, "I was a [sic] qualified for several jobs as an accommodation for my disability." (Doc. 28 at 1) He states in another filing that the hiring and recruitment manager failed to assign him "to one of the several position [sic] I was qualified to do as an accomodation [sic] or hire me in one of them as well. I applied on line but was never contact [sic] by anyone else..." (Doc. 31) Indeed, Dunbrook avers that plaintiff applied for several School jobs "using the District's online application system. Applying for District positions online placed [plaintiff] in the general pool of applications for those positions. The general pool of applications for most District positions is generally quite large." (Dunbrook aff. ¶¶ 14-15) She explains that if the online applicant lacks required or preferred credentials, the application does not advance given the volume of applications received. (*Id.*) Applying for jobs through the School's online job application process is not, even inferentially, the equivalent of requesting an accommodation.

Additionally, while defendant points to evidence that plaintiff refused to participate in the Bureau of Workers' Compensation Vocational Rehabilitation Program, defendant did not suggest that participation in the program was somehow a substitute for a request for an accommodation as plaintiff states in his facts. As discussed above, the program is administered by the Bureau of Workers' Compensation and is independent of defendant. Regardless, plaintiff states, "I was never recommend [sic] for vocational rehab, my doctor always checked no to vocational rehab." (*Id.*) Plaintiff attaches one Bureau of Workers' Compensation Physician's Report of Work Ability completed by his doctor which checks "No" to vocational rehabilitation,

12

but fails to provide an explanation and offer recommendations to help the injured worker return to employment as the form requests. (Doc. 28 Ex. 5) In any event, the statement does not justify plaintiff's continued refusal to participate in the program which would have assisted him in obtaining work in a new position with defendant or another employer.

Because plaintiff did not request a reasonable accommodation, this claim fails.

**(3) Intentional Infliction of Emotional Distress**

Plaintiff's final claim is for intentional infliction of emotional distress based on the foregoing conduct. In Ohio, plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc*., 644 N.E.2d 286, 289 (Ohio 1994). Based on the discussion herein as to the previous claims, this claim fails as plaintiff cannot establish the required elements. Additionally, plaintiff responded, "None," to defendant's interrogatory asking whether he had any treatment for any form of mental, emotional, or psychological condition or problem. (Doc. 27 Ex. 4) And, he admitted in requests for admission that he has neither been diagnosed nor treated for any psychological or psychiatric condition or malady as a result of the events and allegations set forth in the Complaint. (Doc. 27 Ex. 5)

Summary judgment is warranted on this claim.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

13

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/14/16